## Case No. 11,087.

### PHILADELPHIA & R. R. CO. v. BARNES et al.

[3 Am. Law Rep. U. S. Cts. 170; 12 Int. Rev. Rec. 112; 7 Phila. 543; 27 Leg. Int. 308; 3 Chi. Leg. News. 1; 5 Am. Law Rev. 383; 2 Leg. Gaz. 300.] [1]

Circuit Court, E. D. Pennsylvania. Sept. 19, 1870. [2]

INCOME TAX — PERCENTAGE OF CORPORATION DIVIDENDS.

1. The tax of five per cent. out of dividends payable by a bank, railroad company, &c., is a tax on the income of the holder of the stock, and only differs in the mode of collection from his other income tax. The corporation is made the agent of the government for its collection.

2. A dividend declared payable after December 31st, 1869, although for earnings of the year 1869, is not liable to the income tax.

3. The collector cannot justify in an action of trespass for levying on the property of a company for such tax.

In equity.

James E. Gowen, for plaintiffs.
Aubrey H. Smith, U. S. Dist. Atty., for defendants.

STRONG, Circuit Justice. The substance of the second plea, to which there has been a demurrer, is, that the plaintiffs, who are a railroad company, declared a dividend on their capital stock to their stockholders, on the 23d of December, 1869, as part of their earnings, incomes and gains made and accrued between July 1st, 1869, and December 1st, 1869, and that the dividend was declared payable to the stockholders on and after the 17th of January, 1870. The plea further avers that a return thereof was afterwards made to the assessor of internal revenue of the United States, and a tax of five per cent. of the amount of the dividend was assessed by him upon the plaintiffs, which was due and payable on or before March 31, 1870; that notice of the assessment was duly given, and a demand for payment was made

---

[1] [5 Am. Law Rev. 383, contains only a partial report.]

[2] [Reversed in 17 Wall. (84 U. S.) 294.]

upon the plaintiffs by the district collector; that the tax was not paid in response to the demand, whereupon the defendants who were the collector and deputy collectors, on the 5th of May, 1870, made a distress for the tax, together with five per centum additional thereto, and the interest accrued thereon, and that this was the supposed trespass, etc.

It is a plea of justification; and, in order to determine its sufficiency or insufficiency, it is necessary to inquire whether there was any legal warrant for assessing and collecting such a tax. If there was, it is conceded it must be found in the internal revenue act of congress of June 30, 1864 [13 Stat. 223], as amended by its supplements. The primary question then, is, whether that act authorizes the levy and collection of a tax upon dividends declared by railroad companies in 1869 but declared to be payable at a time after December 31st of that year, and therefore not receivable by the stockholders until in the year 1870.

It is of course essential to the inquiry, that it be determined whether the tax upon railroad dividends was, by the act of 1864, made a permanent tax, or whether it was of temporary duration, like the income tax upon other gains and profits. I have no doubt that the tax upon dividends made by such companies, and upon the interest payable by them, described in the 122d section, is a part of the five per cent. tax imposed upon all incomes by the 116th section. By the 116th, as amended by the act of 1867 [14 Stat. 471], it was enacted. that there should be levied, collected and paid annually upon the gains, profits and income of every person residing in the United States, or of any citizen of the United States residing abroad, whether derived from any kind of property, rents, interests, dividends or salaries, or from any profession, trade employment, vocation carried on in the United States or elsewhere, or from any source whatever, a tax of five per centum on the amount so derived over one thousand dollars. The same section. declared that the tax therein provided for should be assessed, collected and paid upon the gains, profits, or income for the year ending the 31st day of December next preceding the time for levying, collecting, and paying said duty. What that time was directed to be, .as well as the duration of the tax, was defined by the 119th section, which enacted as follows: "That the taxes on incomes herein imposed shall be levied on the 1st day of March, and be due and payable on or before the 30th day of April in each year, until and including the year 1870, and no longer." It is noticeable that the language of the 116th section is very comprehensive. It extends to income of every description, whether derived from labor or property; and it particularly mentions that derived from interest and dividends, adding the words "or from any source whatever." It is true, that in the provisions made by congress for estimating

or ascertaining the gains, profits and income of any person, there are certain apparent exceptions. The 117th section, as amended by the act of 1867, required that there should be included in the estimate, inter alia, the share of any person of the gains and profits of all companies, whether incorporated or partnership, who would be entitled to the same if divided, whether divided or otherwise, "except the amount of income received from institutions, or corporations whose officers, as required by law, withhold a per centum of the dividends made by such institutions, and pay the same to the officer authorized to receive the same, and except that portion of the salary or pay received for services in the civil, military or naval, or other service of the United States, including senators, representatives and delegates in congress, from which the tax has been deducted." But these exceptions recognize the dividends and interest received from such companies, and the gains from the salaries or pay of the United States officers, as a part of the tax-payer's income. They are obviously introduced as a guide to the return of income, which the next following section requires to be made to the assistant assessor. and because a special mode of collecting the tax on such dividends, interest and salaries was intended to be provided.

It is indispensable to a correct understanding of the statute that all its sections relating to the same subject be read and considered together. Those numbered from 116 to 123, inclusive, are all classified under the title "Income," and they manifestly relate to the same subject. Together they constitute a system devised to impose and collect a tax upon income or gains from any source whatever. The subject of the tax is one and the same, though consisting of numerous constituents. But the mode of assessment and of collection is different as applied to the constituents of income. Of a portion of his gains the tax-payer is required to make a return to the assistant assessor, and himself pay the tax on that portion to the district collector. But a different mode of collection is prescribed for the tax upon the dividends of banking, trust and insurance companies by the 120th section of the act, and by the 123d section, for the tax upon dividends declared and paid. and upon accumulated profits made, and upon interest on permanent loans by railroad, canal, turnpike, or slackwater navigation companies. Still, the tax is upon the individuals whose gains such dividends and interest are, and it is a tax at the same rate as that collected from other income; but the corporations are made the agents of the government to collect it. Still another mode is prescribed by the 123d section for collecting the tax upon that part of the tax-payer's gains which consists of salaries received from the federal government, or of payments for his services as an officer of the United States. That, the disbursing

officers are required to deduct at the same rate per cent.

It is very obvious to me that these are only variant modes of collecting the tax on income imposed by the 116th section of the act. These portions of income were not required to be included in the general estimate, or in the return made to the assistant assessor, because their amount was as certainly ascertainable to the corporations or officers required to collect it, as it could be by any return of the tax-payer himself. Such a construction is demanded alike by the letter and the general spirit of the act. There is nothing to warrant the belief that congress intended to impose a burden upon income derived from one species of property greater or longer continued than that imposed upon income from other property, or that they intended to discriminate against federal officers, and compel them to pay a tax on their salaries, after taxes upon all other salaries had ceased. The dividends received by a shareholder of a railroad company, or a canal, turnpike, or slackwater navigation company, or of a banking, trust, or insurance company, are, in every sense, as much his income as are the dividends he may receive from any other company; for example, a bridge or a manufacturing corporation. So is the interest received for loans to a railroad company as truly income of the bondholder as is the interest received by him on permanent loans to any other corporation, or to natural persons. Was it the intention of congress to enact that one who lent his money to a telegraph company, or to a mining or manufacturing company, should be exempt from a tax upon his interest received after December 31, 1869; but that one who lent to a canal or railroad company should continue to pay the tax indefinitely and for all time? Is such a reasonable construction of the act of 1864? And again: the salary of an officer of the United States is his income as certainly as the salary received by another from a corporation is his. Was it designed to tax one and exempt the other? To my mind the act shows no intent to make such discriminations. I must regard the 120th, 121st, 122d, and 123d sections, not as imposing a distinct tax upon the subjects mentioned in them, but as having only the purpose to prescribe a peculiar mode of securing the collection of a portion of the tax previously imposed by the 116th section. And such, I think, has been, in effect, the construction adopted by the supreme court. In Jackson v. Northern Cent. R. Co. [Case No. 7,142], a case tried in the circuit court of the United States for the district of Maryland, the primary question was, whether the tax on interest payable by railroad companies was chargeable against non-resident aliens, and it was ruled by the chief justice that it was not. The ruling was based upon the position, that the tax on such interest was the same as that imposed by the 116th section, viz., a part of the income

tax, and that as the 116th section did not include non-resident aliens, the tax on interest spoken of in the 122d was not chargeable against them,—the deduction of five per cent. being only a mode of collecting the income tax. This decision was subsequently affirmed in the supreme court—[Northern Cent. R. Co. v. Jackson] 7 Wall. [74 U. S.] 262—and the language of the court was as follows: "The decision was based mainly upon the ground, that, looking at the several provisions bearing upon the question, and giving to them a reasonable construction, it was believed not to be the intent of congress to impose an income tax on non-resident aliens; that they were not only included in the description of persons upon whom the tax was imposed, but were impliedly excluded by confining it to residents of the United States and citizens residing abroad (an exclusion only found in the 116th section), and that the deduction from the prescribed income of the interest on these railroad bonds, when paid by the companies, was regarded as simply a mode of collecting this part of the income tax. We concur in this view." I understand this case as determining several things: 1st. That the 116th and 122d sections of the act of 1864 are parts of one system, devised for income taxation. 2d. That the tax on railroad dividends, and on interest of railroad indebtedness, is not a different tax from that imposed upon income generally. And 3d. That the 122d section was intended merely to provide a special mode of collection for a part of the tax.

Accepting, then, the conclusion, that the tax on railroad dividends, &c., is only a part of the tax on income generally, imposed by the 116th section, and that the purpose of the 123d was not to impose a distinct tax, but to designate collectors and provide a special mode of collection, I proceed to consider what is the effect of the limitation clause in the 119th section. I have already quoted it; I quote it again for convenience: "The taxes on incomes herein imposed shall be levied on the 1st day of May, and be due and payable on or before the 30th day of June in each year, until and including the year 1870, and no longer." Whatever else this clause may mean it manifestly embraces, in terms, taxes on all income from any source,—income upon which the act imposed a tax. It excepts none. It does not speak of taxes on income, a return of which is required to be made by the tax-payer, but its language is, "taxes on income herein imposed." The 119th section imposes no tax. The reference, must, therefore, be to taxes on income imposed by other sections of the act,—to all of them, as well those on railroad dividends, &c., as those on dividends made by telegraph companies, or gains received from any other source.

The clause also manifests a clear intent, that the income to which it refers should not be subject to a tax, unless derived or received prior to January 1st, 1870. This ap-

pears clearly when construed in connection with the 116th section, as it must be. The section enacted, as has already been noticed, that the tax therein provided for, including the tax on income from any source whatever, should be assessed, collected and paid upon the gains, profits and income for the year ending the 31st day of December next preceding the time for levying, collecting and paying said tax. This provision must be assumed to have been in the mind of congress when the 119th section was framed. Therefore, though the last was required to be levied on the 1st of March. 1870, it was designed to be a tax on the income of 1869; for unless the time for the levy had been fixed in 1870. a large portion of the income of 1869—probably much the largest portion—would have escaped the tax entirely. Then the provision that the taxes on income should be levied on the first day of May in each year, until and including the year 1870, and no longer, must mean that the income of 1870 should not be subject to taxation. If the income referred to was all income, as I have shown it was, in terms. it is difficult to avoid the conclusion, that the act of congress authorizes no tax upon any income accrued, derived or received from any source during the present year. The only doubt I entertain in regard to the soundness of this interpretation is raised by the fact that the limitation mentioned in the 119th section is applied to the time of the levy, and that no express mention is made of taxes on railroad dividends, &c.; but, upon reflection, I think such express mention would have been superfluous. except, perhaps, to solve a doubt, which does not appear to have been in the mind of congress. It seems to me that light is thrown upon the subject, by observing what must have been the course of thought in the legislative mind when the system of income taxation was devised and expressed in the statute. The first thought was that of an annual tax upon all annual income. That was embodied in the 116th section. Next arose the inquiry, whether the tax should be upon the income of the current year, or upon that of the year next preceding its collection. That was answered in the same section. Obviously, the inquiry then arose: How shall the income be ascertained? And, for that, provision was made in the 117th and 118th sections. Then followed the 119th, which provided for three things: "1st. At what time in each year the levy should be made and the tax become payable. 2d. How long the tax should continue. And, 3d. How it should be collected. Then followed some special provisions, not imposing any new or distinct tax, but in aid of the collection of the tax previously imposed. It seems to have occurred to congress, that, as to a portion of income, mainly dividends, interest on funded debt of large corporations, and federal salaries. the machinery of a return to the district assistant assessor was unnecessary;

that the amount of such income was more readily and more certainly ascertainable in another way; and that the collection of the tax might more easily be made by the institutions that had the income in hand than by the district collectors. Hence the provision made in the 120th, 121st, 122d and 123d sections, intended to direct peculiar and exceptional modes of collection, and nothing more. It is true, they compelled the payment of the tax before the expiration of the year in which it was received; and in that respect, as well as in the mode prescribed for collection, they distinguished between the kinds of income specified and income generally. But the act guarded against gross inequality by authorizing a deduction of the income upon which the tax had been paid from the estimate returned to the assessor.

Upon the whole, in view of these considerations, I am of opinion that, except as to the time and mode of collection, congress had no intention of placing the tax on those species of income, mentioned in the 120th, 121st, 122d and 123d sections, on any different footing from the tax on all other income, and that the statute does not impose upon it a burden greater or longer continued than is laid upon income generally. And I am confirmed in my opinion by the conviction that it allows a reasonable construction to the act of congress. If I am wrong in my conclusions, if a tax upon railroad dividends, made payable to the stockholders in 1870, or upon interest upon railroad debt falling due in 1870, may be charged and collected under the act, then the tax is grossly unequal, and that part of a person's income which consists of such dividends is subjected to a burden from which other income is exempt. Under the act of 1864 a tax has been levied upon all incomes. including those from dividends and interest of railroad companies in every year from 1864 to 1869, inclusive. Six of these annual taxes have been laid. I refer now only to those levied under the act of 1864. And the tax upon such portions of each annual income as consist of railroad dividends has been paid by the companies, and presumably charged to the stockholders. If it has not been thus paid, that income has been returned to the assistant assessor, and charged by him; for, as directed by the 117th section, only that income from dividends and interest was allowed to be deducted from the general aggregates which had been assessed, and the tax upon which had been paid by the institutions from which it was derived. Income from railroad dividends has, therefore, paid six annual income taxes, and no more have been assessed against other income. It is not to be presumed, in the absence of a clearly expressed contrary intent, that a discrimination was intended.

8 [But I may not overlook the later act of congress, passed July 14th. 1870 [16 Stat.

---

8 [From 3 Chi. Leg. News, 1.]

256], the 17th section of which enacts "that sections 120-123 of the act of June 30th, 1864, entitled 'An act to provide internal revenue to support the government, to pay interest on the public debt, and for other purposes,' as amended by the act of July 13th, 1866 [14 Stat. 98], and the act of March 2d, 1867, shall be construed to impose the taxes therein mentioned to the first day of August, 1870, but after that date no further taxes shall be levied and assessed under said section." This was doubtless intended as a legislative construction of the sections of the act designated. I shall not pause to inquire how far the law-making power can determine authoritatively the meaning of an existing statute. The construction or interpretation of a statute would seem to be, ordinarily, a judicial, rather than a legislative, function. I know that acts declaratory of the meaning of former acts are not uncommon. They are always to be regarded with great respect, as expressive of legislative opinion. And, so far as they can operate upon subsequent transactions, they are of binding force and unobjectionable. But it is well settled that they cannot operate to disturb rights vested or acquired before their enactment, or to impose penalties for acts done before their passage,—acts lawful when they were done. It is always presumed that the legislature had no intention to give them such an effect.] [3]

Now, if the income tax imposed by the act of 1864, and its supplements, expired with the 31st of December, 1869, (except that the law provided for the collection of that portion of the tax on the income of 1869 which had not been paid) if the act of 1864 did not prescribe a tax upon dividends made and interest paid by railroad companies after December 31, 1869, as I have endeavored to show, it was not the duty of these plaintiffs to pay to the district collector five per cent. of the dividend made by them, declared payable January 17, 1870, and they had no authority to detain any portion of it from their stockholders. It was their right, as well as their duty, to pay over the entire dividend to the stockholders who had then acquired a vested right in it. And the plea of the defendants does not aver that the whole dividend was not at once thus paid over. Then the distress, which the plea attempts to justify, was made to enforce the performance of a duty that has no existence. It was substantially an attempt to enforce the penalty upon the plaintiffs for an omission to do that which they had no right to do,—a penalty equal to the amount of a five per cent. tax with an additional five per cent. thereon. It is to be remembered, that the tax is levied upon the shareholders, and the company is merely the government agent to collect it. Its liability to a distress, if any there be, arose out of an unlawful failure to collect the

[3] [From 3 Chi. Leg. News, 1.]

tax and pay it over. But the failure was not unlawful at the time. Surely, it will not be maintained that the declaratory act of 1870 can be regarded as operating retrospectively to make the act or omission of the plaintiffs unlawful, and punishable as an offence, when the act or omission was innocent at the time when it occurred. Were it conceded that the construction given by congress is binding in all cases where it would not disturb vested rights, or operate practically as an ex post facto law, it is not to be presumed that it was intended for application to such a case as the present. Of course, I am not to be understood as maintaining that in July, 1870, when the declaratory act was passed, that congress had not power to impose a tax upon any income that had been received before that time. What I mean to say is, that it is not to be admitted congress intended by that act to subject any institution to a penalty for not having, before its passage, collected a tax which had not been imposed.

Is, then, a dividend declared December 22d, 1869, but declared to be payable January 17, 1870, income of 1869, or of 1870, within the meaning of the act of congress? I think it must be income of the latter year. True, it was earned by the company in 1869, but it was not available to the stockholder. The act speaks of income derived from any kind of property, &c. It seems to contemplate a tax upon income received, or receivable,—something out of which the tax can be paid. If it were not so, the tax might be exacted for that which never came, and never could come, into the hands of the tax-payer. The language of the 122d section is also significant. In speaking of the companies therein mentioned it declares, they "shall be subject to, and pay a duty of, five per cent. on the amount of all such interest, or coupons, dividends, or profits, whenever the same shall be payable." In other words, the duty arises when the dividend is payable. And such is the construction that has been given to the act, in accordance with which the taxes have been collected. Prior to the act of 1864 there was a tax on the dividends at the rate of three per cent.; and when, by that act, the rate was raised to five per cent., the commissioner of internal revenue issued a circular, dated July 1st, 1864, declaring that "all dividends payable on and after July 1st, no matter when declared, are subject to the duty of five per centum." I am not aware that any different construction of the act has ever prevailed. My opinion, therefore, is, that the dividends declared by the plaintiffs must be regarded as income of the stockholders for the year in which it became payable. It follows that the assessor was without authority to assess a tax upon it, and that the plea of the defendants does not justify the distress they made to enforce its payment by the plaintiffs, together with the payment of a five per cent. additional penalty.

Judgment on the demurrer is. therefore, directed against the defendants.

[The judgment of this court was reversed by the supreme court, where it was carried on writ of error. 17 Wall. (84 U. S.) 294.]